### ARMOUR *et al. v.* CAYUGA LAKE ICE LINE.

*(Supreme Court, General Term, Fifth Department.*  October 23, 1891.)

CONSTRUCTION OF CONTRACT.

In February, 1889, defendant agreed in writing to furnish plaintiffs ice in such quantities and at such times as they might desire, the entire quantity not to exceed 500 tons; all ice ordered during such time as defendant should be harvesting ice from the waters of a certain lake to be furnished for 50 cents per ton, and ice furnished from defendant's store-houses for $1 a ton.  The contract did not name the time during which it should be operative, but there was a clause in it which provided, if merchantable ice could be harvested from the waters of the lake "during the winter of 1889-90," defendant should sell it direct from the lake for 50 cents per ton.  *Held,* that the time during which plaintiffs could demand ice was not limited to the year 1889, but extended into the year 1890, unless 500 tons should be delivered before then.

Appeal from circuit court, Monroe county.

Action by Philip D. Armour and others against the Cayuga Lake Ice Line on a contract.  Judgment for plaintiffs.  Defendant appeals.  Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*W. W. Webb,* for appellant.  *Hubbell & McGuire,* for respondents.

MACOMBER, J.  The action is to recover damages for a breach of a written contract, as follows: "Memorandum of agreement made this February 21, 1889, by and between the Cayuga Lake Ice Line of Rochester, N. Y., of the first part, and Armour & Company, dealers in meats, with a branch office at Rochester, N. Y., parties of the second part, witnesseth:  That the party of the first part hereby agrees to furnish to the parties of the second part ice, of a good merchantable quality for general use, at the times and places and quantities and prices as follows, to-wit:  All ice to be furnished at such times, and in such quantities of not less than ten tons at any one order, as said parties of second part may desire, and upon a notice of not less than three days.  Said ice to be delivered on the cars at the Beef Refrigerator of said parties of the second part, at the corner of Jones and Center streets, in the city of Rochester, N. Y., at the following rates:  All ice ordered by said parties of the second part of said party of the first part, as aforesaid, during such times as ice is being harvested by the parties of the first part from the waters of Cayuga lake, to be furnished at the rate of fifty cents per ton of 2,000 pounds.  Ice furnished by the party of the first part to the party of the second part from the store-houses of said first party to be furnished at the rate of one dollar per ton.  It is agreed that, if merchantable ice can be harvested from the waters of Cayuga lake during the winter of 1889-90, said first party will sell to said second party ice direct from the waters at fifty cents per ton of 2,000 pounds.  *  *  *  It is understood and agreed that the total amount of ice to be delivered by said first party to said second party under this contract

shall not exceed five hundred tons. Parties of the second part agree to purchase ice of the party of the first part upon the aforesaid terms and conditions." Under this contract the plaintiffs ordered and received from the defendant, in the year 1889, 268 tons of ice. It appears that there was no ice harvested by the defendant in Cayuga lake in the year 1889–90, nor did the plaintiffs demand any ice in that year until April 26, 1890. This demand was not acceded to by the defendant, nor were subsequent demands of like nature. For such refusals this action is brought to recover the additional sums of money which the plaintiffs were compelled to pay out to supply their need of ice during the period which they claim was covered by the contract. Of the amount of such expenditure to other persons there seems to be no question; so that, if the construction placed upon the contract by the learned judge at the trial is correct, the judgment, upon the merits of the case, should be affirmed. It is argued by the learned counsel for the defendant that the true construction of the contract is that no ice was to be delivered after the year 1889. The first paragraph of the contract does not name the time during which the agreement should be operative, except that it was the duty of the defendant to furnish ice at such times and in such quantities of not less than 10 tons at any one order as the plaintiffs should desire, and for which notice should be given, not exceeding 500 tons in all. But in fixing the prices it is stated that, during such times as ice may be harvested by the defendant from the waters of Cayuga lake, the ice should be furnished at the rate of 50 cents per ton, while ice not so harvested, and which was furnished from the storehouses of the defendant, was to be paid for at the rate of $1 per ton. But the most important part of the agreement relating to the matter in dispute is the clause above quoted to the effect that, if merchantable ice could be harvested from the waters of Cayuga lake during the winter of 1889–90, the defendant would sell to the plaintiffs direct from those waters at the rate of 50 cents per ton. This clause of the contract, it seems to us, necessarily implies that the time to be covered by the deliveries was not limited to the year 1889, but extended to the year 1890, unless the whole 500 tons had been sooner delivered, and that consequently the contention made in behalf of the plaintiffs is correct. The motion, therefore, for a new trial should be denied. Motion for a new trial denied, with costs, and judgment ordered for the plaintiffs on the verdict. All concur.